IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    *Plaintiff,*

vs.

    Case No. 15-10053-02-EFM

ROBBY ALAN MURPHY,

    *Defendant.*

## MEMORANDUM AND ORDER

Before the Court are two motions filed by the Defendant, Robby Alan Murphy.[1] Murphy moves to suppress all evidence obtained from the warrantless search of his vehicle on April 9, 2015, as well as any evidence recovered from his vehicle as result of a search warrant executed the following day. And Murphy requests a *Franks* hearing to challenge the affidavit underlying the search warrant. In his other motion, Murphy moves to suppress statements he made on April 14, 2015. For the reasons discussed below, the Court denies both motions.

---

[1] Murphy filed an additional motion to dismiss, not through counsel (Doc. 56). The motion raises concerns about ineffective representation hindering his ability to review discovery or receive a speedy trial. The Court granted Murphy's request to replace counsel once earlier in the case. At the hearing for these motions, the Court inquired as to Murphy's concerns about his prior and current counsel. Murphy acknowledged dissatisfaction with his earlier representation, but assured the Court that he was satisfied with his current situation. The other primary issues Murphy raises in his handwritten motion are either addressed in the motions now before the Court, or are not supported by any evidence in the record.

## I.     Factual and Procedural Background

On April 9, 2015, Sedgwick County 911 received a report of an attempted robbery in Cheney, Kansas. The victim told dispatch that he had been held up at gunpoint by two men and a woman. Both men were reportedly armed and a shot had been fired at the scene. The three assailants were fleeing towards Goddard in a red Suzuki. Goddard Police Officers encountered a red Suzuki and pulled the vehicle over. When additional units arrived from the Sedgwick County Sheriff's Office, they executed a high-risk car stop due to the report of a firearm. The officers removed the occupants from the vehicle and searched them for weapons. One of the occupants was the Defendant, Robby Murphy. No weapons were found on any of the occupants' person. The officers then "cleared the vehicle" by making sure nobody was hiding in the trunk. One officer saw a revolver while looking inside the trunk. As a result, other officers also began looking in the trunk; however, they ultimately decided to obtain a search warrant before conducting a more thorough search of the vehicle.

Sergeant Kenneth Kooser of the Sedgwick County Sherriff's Office obtained a search warrant for the red Suzuki on April 10. In the affidavit and application for the search warrant, Sergeant Kooser stated that officers saw a handgun in the vehicle. The affidavit also relied on statements made by the victim of the attempted robbery. The affidavit was silent regarding the victim's credibility. Sergeant Kooser executed the search warrant on April 10, and found, among other things, a revolver, holster, and ammunition.

After the high-risk stop, Murphy was transported to a hospital and was released back into police custody late on April 9. In the early hours of April 10, Sedgwick County detectives tried questioning Murphy. But Murphy invoked his Fifth Amendment right to counsel, specifically saying he "would like to speak to an attorney, please." Questioning ceased at that point. On

April 10, Kansas District Judge Terry Pullman reviewed an affidavit prepared by Sergeant Kooser and found probable cause to hold Murphy. Murphy was not present when this determination was made.

On Sunday, April 12, Murphy's wife contacted Detective Banning of the Sedgwick County Sheriff's Office. She told Detective Banning that Murphy had called her from jail and wanted to speak to the police "right now." Detetctive Banning listened to recorded jail calls between Murphy and his wife and confirmed that Murphy was interested in reinitiating communication. On Tuesday, April 14, Detective Banning and Special Agent Phipps of the Bureau of Alcohol, Tobacco, Firearms, and Explosives approached Murphy. In the call to his wife, Murphy indicated that he would only talk to someone with authority to negotiate his charges. But Murphy executed a waiver of his *Miranda* rights without inquiring as to whether the officers had any authority to negotiate. By 3:00 p.m. on April 14, Murphy made incriminating statements.

While Murphy was being held on state charges, the Sedgwick County Sheriff's Office considered moving forward with federal charges instead. On the morning of April 14, Sergeant Kooser first contacted the U.S. Attorney's office, who expressed interest in taking the case. Around 9:53 a.m., a federal hold was placed on Murphy. Shortly after 1:00 p.m., the state charges against him were released without prosecution. On April 15, Murphy was charged with unlawfully possessing a firearm in violation of federal law. Murphy made his first appearance in front of U.S. Magistrate Judge Karen Humphreys on April 17.

## II.     ANALYSIS

### A.  Motion to Suppress Evidence from Vehicle

Murphy moves to suppress all evidence recovered from the red Suzuki he was occupying. The vehicle was searched twice, and Murphy challenges each search. He argues that the initial

warrantless search of the vehicle violated his Fourth Amendment rights because it was not supported by probable cause. Assuming that the first search was unlawful, Murphy asserts that the second search, which was executed pursuant to a search warrant, is tainted as fruit of the poisonous tree. In addition, Murphy requests a *Franks* hearing to challenge the affidavit in support of the search warrant because the affidavit stated officers saw a handgun in the vehicle. The Government argues that there was probable cause to conduct the warrantless search of the vehicle. Thus, the Government maintains that the search warrant executed later, while lawful, was superfluous. For the reasons discussed below, the Court agrees with the Government.

"The Fourth Amendment generally requires police to secure a warrant before conducting a search."[2] But there are exceptions to the Fourth Amendment's warrant requirement. Under the automobile exception, a police officer may conduct a warrantless search of a vehicle if he has probable cause to believe contraband will be found inside.[3] In such circumstances, "the officer may search the entire vehicle, including the trunk and all containers therein that might contain contraband."[4] Probable cause to search exists where known facts and circumstances would lead a reasonable person to believe evidence of a crime will be found.[5] The probable cause determination is a commonsense inquiry informed by the totality of the circumstances present in a particular case.[6] The events that occurred leading up to the search must be "viewed from the

---

[2] *Maryland v. Dyson*, 527 U.S. 465, 466 (1999) (citing *California v. Carney*, 471 U.S. 386, 390-91 (1985)).

[3] *United States v. Vasquez*, 555 F.3d 923, 930 (10th Cir. 2009).

[4] *United States v. Bradford*, 423 F.3d 1149, 1160 (10th Cir. 2005).

[5] *See Ornelas v. United States*, 517 U.S. 690, 696 (1996).

[6] *United States v. Mathis*, 357 F.3d 1200, 1203-04 (10th Cir. 2004) (citing *Illinois v. Gates*, 462 U.S. 213, 230 (1983)).

standpoint of an objectively reasonable police officer."[7]  The Court finds there was probable cause to believe contraband could be found inside the red Suzuki.

In this case, officers responded to reports of an attempted armed robbery in which a shot had been fired.  Three people were reportedly fleeing in a red Suzuki, and at least two of them were armed.  But none of the occupants had a gun on his person when they were removed from the vehicle.  An objectively reasonable officer would believe that at least one of the weapons used in the attempted robbery was still inside the car.  Thus, there was probable cause to search the car.  Accordingly, the search was lawful under the automobile exception.

By extension, Murphy's next two arguments also must fail.  The assertion that the second search was tainted as fruit of the poisonous tree is baseless.  The poisonous tree doctrine would apply only if the evidence that led to the search warrant had been obtained in violation of Murphy's constitutional rights.[8]  Because the first search was valid, the executed search warrant, while superfluous, was not unlawful.  Murphy's request for a *Franks* hearing is also inapplicable.  For a *Franks* hearing to be relevant, the Government would have had to rely on the search warrant to admit the evidence in question.  Here, the Government seized the evidence pursuant to a lawful, warrantless search.  And thus Murphy would not benefit by prevailing on a *Franks* hearing; the evidence from the car would still be admissible.  In any event, Murphy failed to make a preliminary showing that the alleged defect in the affidavit was material.[9]  If a magistrate would have issued a warrant even if the affidavit had not contained the alleged defect, then the

---

[7] *Ornelas*, 517 U.S. at 696.

[8] *See United States v. Jarvi*, 537 F.3d 1256, 1259 (10th Cir. 2008) (citing *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963)).

[9] *See United States v. Gentry*, 406 F. App'x 274, 279 (10th Cir. 2010) (holding a defendant is not entitled to a *Franks* hearing without making a substantial preliminary showing that defect in the affidavit is material).

defect is immaterial.[10]  Here, even without the statement that an officer saw a handgun in the car, a warrant still would have issued.  The vehicle had been pulled over shortly after reports of an armed robbery in which a shot was fired, but none of the occupants had a weapon on his person.  Without mention of the handgun, the affidavit mirrors the facts and circumstances as they were when officers had probable cause to search the vehicle under the automobile exception.  In each circumstance, the probable cause standard is the same.  A search warrant still would have been issued without the alleged defect in the affidavit.

Because the officers had probable cause to search the entire red Suzuki, Murphy's motion to suppress the evidence obtained from the vehicle is denied.

## B. Motion to Suppress Statements

Murphy also moves to suppress incriminating statements that he made on April 14.  Murphy maintains the statements were made in violation of his Fifth Amendment rights to silence and counsel.  He also argues that the statements should be suppressed under the *McNabb-Mallory* rule and 18 U.S.C. § 3501(c).  In addition, he asserts his statements were obtained during an ongoing violation of his Fourth Amendment rights.  For reasons discussed below, the Court rejects these arguments and denies Murphy's motion to suppress his statements.

### 1. Rights to Silence and Counsel

Murphy contends that statements made after he initially requested counsel should be suppressed because he did not reinitiate communication with law enforcement *himself*.  In *Edwards v. Arizona*, the Supreme Court established a bright line rule that once a defendant has

---

[10] *See United States v. Herrera*, 782 F.3d 571, 575 (10th Cir. 2015) ("[W]e must ask whether a warrant would have issued in a but-for world where the attesting officer faithfully represented the facts. If so, the contested misstatement or omission can be dismissed as immaterial.").

invoked his right to counsel, questioning must cease unless the defendant reinitiates the contact.[11] The issue is whether a defendant may reinitiate contact with the Government through a third party after he has invoked his right to counsel. The 10th Circuit has not addressed the issue of third-party initiation.[12] But other circuits have addressed this question, and have held that third-party reinitiation does not violate the Supreme Court's bright-line, prophylactic rules.[13] This Court agrees.

Murphy argues that allowing a third party to reinitiate communication with the Government contradicts the bright line rule set forth in *Edwards*. Murphy contends that third-party reinitiation invites ambiguity regarding whether a defendant really wants to waive his rights. He argues that such a framework undermines the clarity that the Supreme Court sought to provide by establishing a bright line rule. In support of this argument, Murphy notes that he told his wife he would only speak under certain conditions, and those conditions were not adhered to by the Government. This miscommunication, Murphy claims, exemplifies the uncertainty that follows from allowing third-party reinitiation.

In considering Murphy's argument, it is important to understand the limits and rationale of the *Edwards* rule as developed by the Supreme Court. The purpose of that rule is to prevent the Government from coercively "extract[ing] confessions that would not be given in an unrestrained environment."[14] Specifically, the *Edwards* rule is "designed to prevent police from badgering a

---

[11] *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981).

[12] *United States v. Santistevan*, 701 F.3d 1289, 1296 (Tymkovich, J., dissenting).

[13] *See, e.g.*, *Van Hook v. Anderson*, 488 F.3d 411, 424-25 (6th Cir. 2007); *Owens v. Bowersbox*, 290 F.3d 960, 963 (8th Cir. 2002).

[14] *Arizona v. Mauro*, 481 U.S. 520, 529-30 (1987).

defendant into waiving his previously asserted *Miranda* rights."[15]  Once a suspect has expressed the opinion that without counsel he is not competent to communicate with law enforcement, "a later decision *at the authorities' insistence* to make a statement without counsel's presence may properly be viewed with skepticism."[16]  The *Edwards* rule thus seeks to insulate suspects from undue influence by law enforcement after the right to counsel has been invoked.  It is a prophylactic rule primarily concerned with government action, not the actions of the suspect.

Here, the Government complied with Murphy's initial invocation of his right to counsel.  Questioning ceased and officers did not try to reinitiate contact.  But Murphy called his wife and told her to tell a detective to come see him immediately.  Murphy, not the Government, sought to reinitiate communication.  The sort of government influence that the *Edwards* rule was fashioned to prevent is not present in the instant case.  The outcome might be different if the Government had reached out to Murphy's wife and directed her to encourage reinitiation.[17]  But that is not this case.  After invoking his right to counsel, Murphy sought to reinitiate communication without any urging by the Government.  Such a reinitiation can be done through a third party without presenting any *Edwards* problems.

Although, as Murphy argues, there was some confusion about the terms accompanying his offer to speak, it is obvious that, at the very least, he wanted to reinitiate communication.  Murphy indicated to his wife the conditions on which he wanted to speak to the Government.  But Murphy did not express these conditions to the Government in person before he actually

---

[15] *Michigan v. Harvey*, 494 U.S. 344, 350 (1990).

[16] *Arizona v. Roberson*, 486 U.S. 675, 681 (1988) (emphasis added) (quoting *Michigan v. Mosley*, 423 U.S. 96, 110 n.2 (1975) (White, J., concurring)).

[17] *See Santistevan*, 701 F.3d at 1296 (Tymkovich, J. dissenting) (Noting that third-party reinitiation is appropriate when government is not working with the third party).

began speaking to them. Rather, he was read his *Miranda* rights, noted that he understood them, executed a waiver of those rights, and began talking. The prophylactic rules designed to protect a suspect's Fifth Amendment rights are not concerned with a suspect's individual preconditions of a given communication.[18] Instead, the rules protect a suspect's "right to choose between speech and silence."[19] And here, Murphy chose speech. Even if Murphy was only willing to speak under certain conditions when he reached out to his wife, he waived those conditions when he reinitiated contact with the Government, waived his *Miranda* rights, and spoke without raising the conditions in person.

Because he willingly sought to reinitiate contact with the Government, Murphy's statements were not made in violation of his Fifth Amendment rights to silence or counsel.

**2. Presentment and Probable Cause Determination**

Murphy further argues that his statements should be suppressed because they were made in violation of the *McNabb-Mallory* rule and 18 U.S.C. § 3501(c). The *McNabb-Mallory* rule dictates that a confession must be suppressed if it is obtained during a period of undue delay in presenting a defendant before a magistrate.[20] Title 18 U.S.C. § 3501(c) modified the rule without supplanting it.[21] Under § 3501(c), a confession made before presentment is admissible if it was voluntarily made within six hours of arrest.[22] If the confession is made more than six

---

[18] *Cf. Connecticut v. Barrett*, 479 U.S. 523, 528-29 (1987) (holding that a suspect's Fifth Amendment rights were not violated when he agreed to speak with officers, but refused to give a written statement without an attorney).

[19] *Id.* at 529.

[20] *United States v. Torres*, 663 F.2d 1019, 1023 (10th Cir. 1981).

[21] *Corley v. United States*, 556 U.S. 303, 322 (2009).

[22] *Id.*

hours after the arrest, but before presentment, it will be suppressed if the delay in presenting the defendant to a magistrate was unreasonable or unnecessary.[23] Murphy argues that his confession should be suppressed because he was arrested on April 9 and confessed on April 14, but was not presented before a U.S. Magistrate until April 17. But this argument relies on an improper application of § 3501(c).

It is undisputed that Murphy was arrested on April 9. But the arrest was initially for state charges. Specifically, he was arrested under Kansas law for aggravated robbery and possession of firearm by a felon. The U.S. Attorney's office did not get involved until the morning of April 14. At this point, the state charges were dropped and a federal hold was placed on Murphy. While a suspect is held solely on state charges, § 3501(c) does not apply.[24] "Until a person is arrested or detained for a federal crime . . . no 'delay' under § 3501(c) can occur."[25] This is true even if while the suspect is being held on state charges, the arresting officers have reason to believe federal law was also violated.[26] Thus, § 3501(c) did not apply in the present case until the morning of April 14. The federal hold was placed on Murphy sometime after 9:00 in the morning, and he made incriminating statements by 3:00 that afternoon. Murphy voluntarily confessed within six hours of the federal hold and before he was formally charged with a federal offense. Under § 3501(c), the confession is admissible.

Murphy also argues his statements should be suppressed because they were made during an ongoing violation of his Fourth Amendment rights. The Fourth Amendment requires a prompt

---

[23] *Id.*

[24] *United States v. Alvarez-Sanchez*, 511 U.S. 350, 358 (1994).

[25] *Id.*

[26] *Id.*

judicial determination of probable cause as a prerequisite to detention following an arrest.[27] Generally, this requirement is met if the determination is made within 48 hours of the arrest.[28] In this case, a state judge made such a determination on April 10, just one day after Murphy's arrest on state charges. But Murphy argues that the procedure was constitutionally insufficient because the determination was made via documentary review, outside of his presence. Believing that no valid probable cause determination was made, he therefore argues that his statements should be suppressed because they were obtained during an ongoing violation of his Fourth Amendment rights. The Court disagrees.

Although the Fourth Amendment does require a prompt determination of probable cause, the Supreme Court declined to fashion a specific procedure for the states to follow.[29] Probable cause can "be determined reliably without an adversary hearing."[30] Such a determination can be made without the presence of the arrestee, as occurred here.[31] As required by the Fourth Amendment, Murphy received a probable cause determination within 48 hours of his arrest. In addition, he appeared before of a U.S. Magistrate after he was charged federally, in compliance with Rule 5 of the Federal Rules of Criminal Procedure.[32] Therefore, there was no "ongoing violation" of Murphy's Fourth Amendment rights. Separate probable cause determinations were made to hold

---

[27] *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975).

[28] *County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991).

[29] *Gerstein*, 420 U.S. at 123-24.

[30] *Id.* at 120.

[31] *Strepka v. Miller*, 28 F. App'x 823, 828 (2001).

[32] Fed. R. Crim. P. 5(a)(1)(A).

Murphy on both state and federal charges. His statements were lawfully obtained, and will not be suppressed.

**IT IS THEREFORE ORDERED** that the Murphy's Motions to Suppress Evidence and Request for *Franks* Hearing (Doc. 50) is **DENIED**.

**IT IS FURTHER ORDERED** that Murphy's Motion to Suppress Statements (Doc. 49) is **DENIED.**

    **IT IS SO ORDERED**.

    Dated this 24th day of September, 2015.

                                      */s/ Eric F. Melgren*
                                      ERIC F. MELGREN
                                      UNITED STATES DISTRICT JUDGE