# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    *Plaintiff,*

vs.

    Case No. 15-10053-02-EFM

ROBBY ALAN MURPHY,

    *Defendant.*

## MEMORANDUM AND ORDER

Defendant Robby Alan Murphy is charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Murphy, appearing pro se, now moves to dismiss the indictment against him because he claims it is based on perjured grand jury testimony (Docs. 170 and 178). Alternatively, Murphy moves to suppress incriminating statements that he made while in custody. He argues his statements should be suppressed because they were made involuntarily (Doc. 93) and while he was unlawfully detained (Doc. 172). In addition, Murphy requests that certain property that was seized be returned to him (Doc. 86). For the reasons stated below, the Court denies each of Murphy's motions.

### I.   Factual and Procedural Background

On April 9, 2015, Murphy was arrested on suspicion of attempted robbery. The victim of the robbery was a drug dealer, and substantial amounts of drugs and paraphernalia were found at

his home. The victim reported that he had been held up by Murphy and two other persons. He claimed that Murphy and another man brandished handguns and threatened to shoot him. Murphy and his companions fled when the victim's son became aware of the robbery and fired a single gunshot. Murphy and his co-assailants were eventually stopped, arrested, and taken into custody. Murphy was transported to a hospital due to a suspected drug overdose, and was given antipsychotic medication while en route.[1] Murphy was released back into police custody late on April 9 and invoked his *Miranda* right to have counsel present during questioning shortly thereafter. At that point, attempts to interview Murphy ceased. Meanwhile in a separate interview, the robbery victim told police that Murphy and his companion used a .32 derringer and a .38 revolver to rob him, but in reality, a .38 caliber derringer and a .44 caliber revolver were recovered.

On April 10, Kansas District Judge Terry Pullman reviewed an affidavit prepared by Sergeant Kooser to determine whether there was probable cause to hold Murphy. The affidavit recounted the victim's account of the armed robbery and noted that Murphy was a felon who was statutorily prohibited from possessing a firearm. The affidavit contained no mention of the fact that the victim was a drug dealer or had any credibility issues. It also failed to note that the victim's son fired the only gunshot at the scene. Judge Pullman ultimately determined there was probable cause to hold Murphy.

While in custody, Murphy reinitiated contact with law enforcement officers by asking his wife to contact someone "with authority to negotiate his charges."[2] On April 14, Detective

---

[1] In a later interview with Detective Banning, Murphy hinted that the overdose was actually a ruse so that he could interact with law enforcement outside the presence of his cohorts.

[2] This Court has previously determined that Murphy knowingly waived his *Miranda* rights and reinitiated contact with the Government. *See* Doc. 77.

Banning of the Sedgwick County Sheriff's Office and a special agent from the Bureau of Alcohol, Tobacco, and Firearms ("ATF") approached Murphy. They confirmed that Murphy did in fact wish to waive his previously invoked *Miranda* rights and speak to them. Murphy was read each of his rights, orally acknowledged that he understood them, and waived them. He went on to speak at length with Detective Banning and the ATF agent. The interview was taped, and the Court watched significant portions, but not all, of the videotape. Murphy controlled the conversation and required little prompting from Detective Banning. Murphy spoke coherently and did not slur his words. He did not appear tired or under serious duress. Over the course of the interview, Murphy made several incriminating statements in hopes of receiving some sort of leniency in return. But by the end of the interview, it became apparent to Murphy that his charges would remain unchanged.

On April 28, Sergeant Kooser testified before the grand jury about Murphy's case. A grand juror asked if the victim had correctly identified the guns. Sergeant Kooser replied that the victim described the guns "to a T" when in fact, the victim had been wrong about the caliber of the firearms. The grand jury returned an indictment charging Murphy of possessing a firearm while a convicted felon in violation of 18 U.S.C. § 922(g)(1). On March 1, 2016, the Government corrected this error about testimony regarding the victim's identification of the gun and the grand jury returned a superseding indictment against Murphy. Murphy now moves to dismiss the indictment against him or alternatively, to suppress the statements he made on April 14, 2015.

## II.     ANALYSIS

Murphy argues that the indictment against him should be dismissed because it is based on perjured grand jury testimony. Alternatively, he contends that the statements he made on April

14, 2015, should be suppressed because they were made during his pretrial detention, and the probable cause finding justifying that detention was improper. He also claims that his statements should be suppressed because they were made involuntarily.

Murphy has the burden of showing that the grand jury's indictment was based on intentionally perjured testimony.[3] And Murphy must demonstrate that there would not have been probable cause for his pretrial detention if material facts had not been omitted from the underlying affidavit.[4] But the Government bears the burden of proving that Murphy's confession was voluntarily given.[5]

### A. Grand Jury Testimony

Murphy claims that the indictment against him must be dismissed because Sergeant Kooser committed perjury before the grand jury, and the prosecutor failed to correct it. Murphy argues that Sergeant Kooser committed perjury when he claimed that the victim described the guns used in the robbery "to a T" when the victim actually failed to correctly identify their calibers. Murphy contends that this was perjury and was material to the grand jury's decision to indict him. Therefore, he argues that the indictment should be dismissed since it relied on perjured testimony that went uncorrected by the prosecutor.

Even if Murphy's allegations were true, dismissal of the indictment against him would not be warranted. Murphy is facing a superseding indictment that was returned on March 1, 2016. The grand jury that returned the superseding indictment did not hear Sgt. Kooser's

---

[3] *United States v. Foote*, 188 F. Supp. 2d 1303, 1306 (D. Kan. 2002).

[4] *Cf. United States v. Hajduk*, 396 F. Supp. 2d 1216, 1238 (D. Colo. 2005) (noting that the burden is on the defendant to demonstrate that false or omitted statements were necessary to a finding of probable cause before a *Franks* hearing is warranted).

[5] *United States v. McCurdy*, 40 F.3d 111, 1119 (10th Cir. 1994).

statement about the guns matching "to a T," and therefore, the indictment that Murphy is facing is unrelated to the alleged perjury he identifies.[6]

But putting aside the superseding indictment, Murphy's motion is still without merit. To obtain dismissal of an indictment based on perjured grand jury testimony, Murphy must demonstrate that (1) Sgt. Kooser intentionally committed perjury before the grand jury and (2) that such testimony was material to the grand jury's decision to return an indictment.[7] Murphy fails to convincingly demonstrate either of these elements. The Government concedes that Sergeant Kooser was mistaken when he testified that the victims identified the firearms "to a T." But there was no evidence that Sergeant Kooser's testimony about the firearms constituted perjury. To commit perjury a witness must (1) give false testimony under oath; (2) concerning a material matter; (3) with willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory.[8] Murphy fails to demonstrate that Sergeant Kooser's testimony was willfully given with the intent to mislead. Mistake or faulty memory is much more likely. In addition, there is no evidence that Sergeant Kooser's testimony was material to the grand jury's decision. The issue was whether Murphy was a felon who possessed a firearm. The caliber of the firearms is of little import; the victim's description of the caliber even less so. At the end of the day, the grand jury only had to determine whether Murphy likely possessed a firearm. An indictment was probable whether or not the victim correctly identified the caliber of the weapon. The grand jury knew Murphy was a felon, he was identified as the assailant in an

---

[6] *See United States v. Smith*, 941 F. Supp. 985, 989 n.3 (D. Kan. 1996) (noting that the defendant's motion to quash indictment was moot because the alleged omissions were corrected by a superseding indictment).

[7] *Foote*, 188 F. Supp. 2d at 1306.

[8] *United States v. Massey*, 48 F.3d 1560, 1573 (10th Cir. 1995).

armed robbery, a handgun was recovered from the vehicle he occupied, and that Murphy incriminated himself. Whether or not the victim could correctly identify the caliber of the gun Murphy possessed is inconsequential. There was ample evidence for the grand jury to indict Murphy of being a felon in possession of a firearm.

Since the Government corrected Sergeant Kooser's mistaken testimony with a superseding indictment, and since the mistake was neither intentional nor material, Murphy's motion to dismiss the indictment against him is denied.

### B. Improper Probable Cause Determination

Murphy moves to suppress incriminating statements he made while in custody. He claims that the probable cause determination underlying his pretrial detention was improper. And so he argues that the statements should be suppressed because he was being unlawfully detained when he made them.

The Fourth Amendment requires a prompt judicial determination of probable cause as a prerequisite to detention following an arrest.[9] Probable cause exists where the totality of the circumstances demonstrate the probability of criminal activity to a reasonable mind.[10] In this case, Judge Pullman reviewed an affidavit prepared by Sergeant Kooser and determined that there was probable cause to hold Murphy. And this Court has already found that this procedure was constitutionally adequate.[11] But Murphy argues that the probable cause determination relied on misleading information. More specifically, he contends that material facts were omitted from the affidavit that would have vitiated probable cause. According to Murphy, the affidavit should

---

[9] *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975).

[10] *United States v. Nolan*, 199 F.3d 1180, 1183 (10th Cir. 1999).

[11] *See* Doc. 77 at 10-11.

have noted that the victim was a drug dealer with poor credibility, and that the victim's son is the one who fired the shot.

"[I]t is a Fourth Amendment violation to knowingly or recklessly omit from an affidavit information that would have vitiated probable cause."[12]  But if the omitted evidence is not material to the probable cause determination, then no violation has occurred.[13]  If the affidavit would have supported probable cause even if the omitted facts were contained therein, then the Court will deny a motion to suppress.[14]  If the omitted facts are immaterial, then the Court need not consider whether the information was recklessly withheld.[15]  Here, the omitted facts complained of by Murphy are immaterial.  Sergeant Kooser's affidavit revealed the following information.  The victim reported that Murphy robbed him at gunpoint.  Shortly thereafter, Murphy was pulled over, and a gun was found in the vehicle.  And Murphy is a felon who cannot legally possess a firearm.  This evidence sufficiently establishes probable cause of criminal activity, with or without details about the victim's background.

It is of little import that Murphy's robbery victim was a drug dealer.  A similar omission from an affidavit was found to be immaterial in *United States v. Morin*.[16]  In *Morin*, the affidavit underlying a search warrant failed to note that a confidential informant was a recently arrested methamphetamine user.[17]  The Court noted that "the affidavit's failure to give a more thorough

---

[12] *United States v. Knapp*, 1 F.3d 1026, 1029 (10th Cir. 1993).

[13] *Id.*

[14] *Id.*

[15] *United States v. Kennedy*, 131 F.3d 1371, 1377 (10th Cir. 1997).

[16] 188 F. App'x 709 (10th Cir. 2006).

[17] *Id.* at 712.

recitation of [the informant's] background did not impair the substantial basis for the state court's probable cause determination."[18] Although the omissions in the instant case related to the victim, and not an informant, the result is the same. Possessing a gun as a felon is against the law even if it is done to rob a drug dealer. Allegations of unsavory victims are not to be summarily dismissed as untrue, especially when they are corroborated by material evidence—like a firearm found in the trunk of a car occupied by a fleeing suspect.

The fact that the victim in this case is not a model citizen is immaterial to Judge Pullman's probable cause determination. Sergeant Kooser's affidavit would have supported probable cause even if it had included facts about the victim's credibility. Because the omissions complained of by Murphy were immaterial, his motion to suppress his statements is denied.[19]

### C. Voluntariness of Confession

Murphy argues that his confession should be suppressed because it was involuntarily given. Murphy claims that he used methamphetamine nearly every day from February until April of 2015. He asserts that he ingested an especially large amount of methamphetamine on April 9, the day he was arrested. Murphy argues that when he confessed on April 14, his state of mind was influenced by the effects of methamphetamine, sleep deprivation, lack of food, and the fact that he had been held incommunicado for five days without access to counsel. Accordingly, he claims that his confession was involuntary and should be suppressed.

---

[18] *Id.*

[19] Murphy also argues that he was not promptly brought before a magistrate in violation of Kan. Stat. Ann. § 22-2901. The Court has already addressed the presentment issue in this case (Doc. 77), and will not do so again here. Whether or not state procedures were properly followed is irrelevant; no constitutional rights have been violated.

When considering whether a confession was voluntarily given, the Court considers the suspect's age, intelligence and education, whether the suspect was informed of his or her rights, the length and nature of the suspect's detention and interrogation, and the use or threat of physical force against the suspect.[20] Ultimately, the voluntariness of a confession is determined by looking at "the totality of the circumstances, considering both the characteristics of the accused and the details of the interrogation."[21]

At the outset, the Court would note that Murphy has shown himself to be of above average intelligence. He initially invoked his *Miranda* rights and seems to understand them. He has previous experience with the legal system and although he was held for five days before he confessed, there is no evidence of threats or physical force against him.

The crux of Murphy's involuntariness argument turns on his assertion that at the time he confessed, the withdrawal effects associated with over a month of daily methamphetamine use adversely influence him. But the evidence convinces the Court that even if Murphy was experiencing these effects during his interview, they were not overpowering and did not render his confession involuntary. The Court watched the video of Murphy's interview with Detective Banning, which showed that before Murphy gave his statement on April 14, 2015, Detective Banning read Murphy his *Miranda* rights. Murphy orally indicated that he understood each right and wished to waive those rights. Following this waiver, Murphy spoke at length to Detective Banning. Murphy spoke coherently and calmly. He did not slur his words, he did not yawn, and he did not appear exhausted or exasperated. He did not seem worn down or ill. He was neither

---

[20] *United States v. Smith*, 606 F.3d 1270, 1276 (10th Cir. 2010).

[21] *United States v. Lopez*, 437 F.3d 1059, 1063 (10th Cir. 2006) (quoting *United States v. Toles*, 297 F.3d 959, 965-66 (10th Cir. 2002) (internal quotation marks omitted).

lethargic nor overly restless. He was as composed as one could expect a suspect in custody to be. And Detective Banning was not aggressive or coercive in any way during the interview. In fact, Detective Banning played a relatively small role in obtaining Murphy's confession: Murphy did almost all of the talking. Detective Banning would only occasionally interrupt Murphy's narrative to ask questions. Murphy's conversation was rational and intelligent, and never did Detective Banning make any promises or threats in exchange for information.

In such circumstances, a confession will not be suppressed as involuntary.[22] Here, the Government's evidence demonstrated that Murphy "was sufficiently in touch with reality so that he knew his rights and the consequences of abandoning them" and Murphy has produced no "evidence showing his condition was such that it rose to the level of substantial impairment."[23]

Murphy also suggested that his confession was involuntary due to an implied understanding that he would receive leniency in exchange for his statements. He noted that he asked his wife to contact someone who could negotiate his charges, and the presence of an ATF agent implied that his request had been fulfilled—even though the ATF agent made no express assurances. "[A] promise of leniency may render a confession involuntary if it was sufficiently compelling and linked to the confession so that it could be said that the defendant's will was overcome by the offer."[24] But a vague and noncommittal statement by a law enforcement officer is not a promise of leniency.[25] Here, the only evidence that Murphy can point to is the presence

---

[22] *Chavez v. Franco*, 609 F. App'x 527, 529 (10th Cir. 2015) (finding that a confession was voluntary where the suspect "exhibited no signs of intoxication . . . and there is no evidence of coercive police activity.").

[23] *United States v. Burson*, 531 F.3d 1254, 1258 (10th Cir. 2008).

[24] *Clanton v. Cooper*, 129 F.3d 1147, 1159 (10th Cir. 1997).

[25] *United States v. Varela*, 576 F. App'x 771, 778 (10th Cir. 2014) (finding a confession voluntary where the officer told the suspect "I think we can, we can do something. I'm just saying I can't—I can't take those charges away right now."); *see also United States v. Rodebaugh*, 798 F.3d 1281, 1293 (10th Cir. 2015) (finding that the

of an ATF agent, which apparently implied leniency to Murphy.[26]  There was no promise of leniency that would have overcame Murphy's will and rendered his confession involuntary.

Looking at the totality of the circumstances, there is simply no evidence—outside of Murphy's bare assertions—suggesting that the confession in this case was involuntary.  Murphy was alert, aware, and in touch with reality when he waived his *Miranda* rights and made incriminating statements.  And there was no promise of leniency that would render his confession involuntary.  Therefore, his motion to suppress the statements is denied.

### D. Motion to Return Property

Murphy also requests that the Government return his cell phone, driver's license, social security card, and other items taken from his wallet.  He moves under Fed. R. Crim. P. 41(g), which provides that "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return."  Here, these items were taken when Murphy was arrested as part of a criminal investigation.  "The government is clearly permitted to seize evidence for use in investigations and trial."[27]  And non-contraband that has been seized should be returned to its rightful owner once the criminal proceedings have terminated.[28]

---

statement "if you work with us, we'll go easy on you" was vague and non-committal and did not constitute a promise of leniency).

[26] Murphy also alleges that he asked Detective Banning if his charges would be dropped and Detective Banning replied "we'll see" and "trust me."  But Murphy proffered these allegations while not under oath or subject to cross examination.  Even if the Court were to accept these statements as evidence, they are vague and noncommittal and do not constitute a promise of leniency.

[27] *United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1212 (10th Cir. 2001).

[28] *United States v. Penry*, 515 F. App'x 784, 787 (10th Cir. 2013).

Because, for the reasons stated above, Murphy has not shown that his arrest, detention, or the seizure of his property was unlawful, the Court will not order the Government to return them before criminal proceedings have terminated. Therefore, Murphy's motion is denied without prejudice. If the Government fails to return Murphy's non-contraband to him at the conclusion of these proceedings, Murphy can file another motion under Rule 41(g).

### III.    Conclusion

For the reasons state above, the Court denies each of Murphy's motions. The Court denies Murphy's motions to dismiss because any errors made in the grand jury proceedings were corrected by the superseding indictment, and in any event, the errors were immaterial. The Court denies Murphy's motions to suppress because the victim's credibility was immaterial to the probable cause determination required for pretrial detention, and because Murphy's statements were given voluntarily. Lastly, the Court denies without prejudice Murphy's motion to return property because his property was lawfully seized and criminal proceedings are still pending.

**IT IS THEREFORE ORDERED** that the Murphy's Motion to Dismiss (Doc. 170) and Supplemental Motion to Dismiss (Doc. 178) are **DENIED.**

**IT IS FURTHER ORDERED** that Murphy's Motions to Suppress Statements (Doc. 93 and Doc 172) are **DENIED.**

**IT IS FURTHER ORDERED** that Murphy's Motion to Return Property (Doc. 86) is **DENIED** without prejudice.

**IT IS SO ORDERED**.

Dated this 9th day of May, 2016.

*[signature: Eric F. Melgren]*

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE